Paul Alan Levy (DC Bar 946400)
Scott Michelman (Bar No. 236574)
Email: smichelman@citizen.org
Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C.  20009
Telephone: (202) 588-1000
Facsimile: (202) 588-7795

Aden J. Fine (Bar No. 186728)
Email: afine@aclu.org
American Civil Liberties Union Foundation
125 Broad St., 18th Floor
New York, New York 10004
Telephone: (212) 549-2693
Facsimile: (212) 549-2654

Matthew Zimmerman (Bar No. 212423)
Email:  mattz@eff.org
Electronic Frontier Foundation
454 Shotwell Street
San Francisco, California 94110
Telephone: (415) 436-9333 x127
Facsimile: (415) 436-9993

Attorneys for Amici Curiae

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RON PAUL 2012 PRESIDENTIAL CAMPAIGN COMMITTEE, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>DOES 1-10, INCLUSIVE,<br><br>Defendants. | No. CV-12-0240-MEJ<br><br>**MEMORANDUM OF PUBLIC CITIZEN, AMERICAN CIVIL LIBERTIES UNION, ELECTRONIC FRONTIER FOUNDATION, AND DIGITAL MEDIA LAW PROJECT AS AMICI CURIAE RESPONDING TO PLAINTIFF'S MOTION FOR EARLY DISCOVERY TO IDENTIFY ANONYMOUS SPEAKERS** |

On January 25, 2012, the Court denied without prejudice the motion of plaintiff Ron Paul 2012 Presidential Campaign Committee ("Paul Committee") for leave to seek discovery identifying anonymous defendants who created and disseminated a video attacking Presidential candidate Jon Huntsman and urging votes for rival candidate Ron Paul.  The Court initially instructed plaintiff that, if it refiled its motion, it should explain how its request could satisfy the requirements of such cases

as *Columbia Insurance Co. v. Seescandy.com*, 185 F.R.D. 573, 578 (N.D. Cal. 1999); in a subsequent opinion, after amici filed a memorandum asking for clarification of that order in light of the higher standard stated by such cases as *Dendrite International v. Doe*, 775 A.2d 756 (N.J. App. 2001), and *Highfields Capital Management v. Doe*, 385 F. Supp.2d 969, 976 (N.D. Cal. 2005), DN 9-1, the Court directed plaintiff to address amici's arguments in any further request for discovery.[1]

Paul Committee has now renewed its motion for leave to take early discovery. Although its memorandum in support ("Paul Mem.") recites three possible standards to govern its motion, it does not contend that the *Dendrite / Highfields Capital* standard is never applicable to motions seeking to identify anonymous Internet users. Indeed, it offers no response to the argument in amici's initial memorandum that *Dendrite* is the proper standard to balance First Amendment rights with a plaintiff's interest in discovery. Instead, it argues that those cases should not be applied here because the video attacking Huntsman and urging "Vote Ron Paul" is supposedly commercial and not political speech. In this memorandum, amici address those two arguments first, and then provide other reasons why the motion for early discovery should be denied.

**1. The Does Did Not Make Commercial Use of Ron Paul's Name.**

Plaintiff argues the speech at issue here is exempt from consideration under the *Dendrite* analysis pursuant to *Anonymous Online Speakers v. United States District Court*, 661 F.3d 1168 (9th Cir. 2011), and indeed that plaintiff can meet the commercial use requirement established by both the First Amendment and by the Lanham Act as authoritatively construed by the Ninth Circuit in *Bosley Medical v. Kremer*, 403 F.3d 672, 676-677 (9th Cir. 2005), because the video was supposedly intended to interfere with Paul Committee's efforts to raise money for its campaign. Paul Mem. 12. But *Anonymous Online Speakers*, 661 F.3d at 1177, said only that the right to speak anonymously has no application to speech that is commercial within the *Central Hudson* definition, *i.e.*, "expression related solely to the economic interests of the speaker and its audience." *Central Hudson Gas & Elec.*

---

[1] In a decision issued this week, the Indiana Court of Appeals has joined the majority approach embracing *Dendrite* with its requirement of evidence and express balancing. *In re Indiana Newspapers,* — N.E.2d —, 2012 WL 540796 (Ind. App. Feb. 21, 2012).

-2-

*Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 561 (1980). Nothing about the anti-Huntsman video relates to the economic interest of **either** the speaker **or** the audience.

Indeed, treatment of the video as commercial speech because of its potential impact on campaign contributions to plaintiff is foreclosed by Ninth Circuit precedent. *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1016-1018 (9th Cir. 2006), reversed a district court injunction that invoked the Lanham Act to forbid the operator of a "gripe site" about the well-known auto manufacturer from placing links on his web site to pages where the plaintiff was criticized, holding that "effect on commerce" is not a proper ground for treating speech as commercial. *Bosley Medical v. Kremer* also held that a web site operator could not be brought within the purview of the Lanham Act on the theory that his objective was to discourage Internet users from doing business with the plaintiff business. 403 F.3d at 679.

> Any harm to Bosley arises not from a competitor's sale of a similar product under Bosley's mark, but from Kremer's criticism of their services. Bosley cannot use the Lanham Act either as a shield from Kremer's criticism, or as a sword to shut Kremer up.

*Id.* at 680.

Kremer was a dissatisfied customer of Bosley's, and his very hostile web site was, in Paul Committee's own words, plainly intended to "cause economic injury" to Bosley. Paul Mem. 12 line 28. But the Ninth Circuit held that this objective did not make Kremer's site commercial and hence bring it within the Lanham Act; the same reasoning bars application of the Lanham Act to the anonymous videographers in this case.

Paul Committee also argues at some length that the language of the Lanham Act does not require commercial use of the trademark, Paul Mem. at 16-17, but as amici showed in their memorandum requesting clarification, DN 9-1 at 14-16, that issue was authoritatively resolved by the Ninth Circuit in *Bosley*, which held that the "in connection with goods and services" language, which establishes a prerequisite for infringement claims, demands commercial use. Paul Committee attempts to distinguish *Bosley* based on supposed differences between the degree of confusion alleged in the

two cases. Mem. at 17-18. But Paul Committee never shows how the cases are different with respect to commercial use or the lack thereof.

### 2. Paul Committee Cannot Evade *Dendrite* by Labeling the Speech As Unprotected.

Paul Committee argues throughout its brief that the Court should not apply the *Dendrite* test because the speech at issue in this case is not political speech, or because the speech is "infringing" or "defamatory" and hence not protected by the First Amendment. *E.g.*, Paul Mem. at 11, 13.[2/] This argument, however, confuses the type of speech that is at issue with the extent to which that speech would be protected. Statements by Larry Sinclair during the 2008 election claiming that Barack Obama used cocaine with him, *Sinclair v. TubeSockTedD*, 596 F. Supp.2d 128, 130 (D.D.C. 2009), were political speech even though they were defamatory. Political speech is not absolutely protected against liability; there are various exceptions, and the question in this case, as in any lawsuit brought over political speech, is whether any exceptions apply. But up to this point in the litigation, there are only allegations that the Does have done something wrong. The very function of the *Dendrite* test is to enable the Court to make a preliminary determination whether there is a sufficient likelihood that plaintiff can succeed in a lawsuit against the Does to warrant stripping them of their right to speak anonymously. The contention that the speech is "unprotected" is no reason not to apply the *Dendrite* test in the first place.

After all, in *Highfields Capital* there were also allegations of trademark infringement and defamation; in *Art of Living* there were allegations of copyright infringement and defamation; in *Mobilisa v. Doe,* there were allegations of trespass, computer fraud and defamation; in *Cahill* and *Dendrite* there were allegations of defamation. Indeed, in every one of the *Dendrite* line of cases, the plaintiffs were **claiming** that the Does' speech violated their rights in some respect, and hence was

---

[2/] Indeed, plaintiff goes further, asserting that the Does "attribute their views to Plaintiff," Mem. 11, "have deliberately attempted to mislead people into believing that their ideas originate with or are endorsed by Plaintiff," *id.*, and "obviously intended to deceive the public into believing that Plaintiff is the source of the Video." *Id.* Curiously, later on the same page, Paul Committee argues that the Does "tried, successfully, to trick people into believing that the Video did not come from Plaintiff rather than from an anonymous source."

-4-

outside the protection of the First Amendment. Such claims were not enough to avoid the need to apply the *Dendrite* analysis in those cases, and they are not enough here.

Plaintiff also argues that the Does are not truly anonymous because they used the pseudonym "NHLiberty4Paul" and because the Video contains the words "Vote Ron Paul." But the Doe defendants in every one of the *Dendrite* line of cases, including *Highfields Capital* and *Art of Living*, used pseudonyms, and in *Highfields Capital* the pseudonym was the name of the principal officer of the plaintiff company (used as a parody). Indeed, when speaking of the right to speak anonymously in *McIntyre v. Ohio Election Commission*, 514 U.S. 334 (1995), the Supreme Court described "Publius," "Mark Twain," and "Shakespeare" as examples of the rich tradition of anonymous speech that the First Amendment protects. The use of a pseudonym is no reason to allow discovery to identify the user of that pseudonym.

### 3. *Dendrite* Has Not Been Satisfied.

In their brief supporting clarification of the Court's initial order, amici agreed that Paul Committee had satisfied the second prong of the *Dendrite* test, by specifying the allegedly actionable words and their context. Amici also agree that, by posting on the Does' YouTube account and sending a tweet to their Twitter account, Paul Committee has done the best it can to meet the notice requirement. To be sure, it is possible that the Does are not monitoring either the YouTube or the Twitter account—neither account shows any sign of having been used since January 5. If the Court rejects amici's arguments and authorizes early discovery, amici suggest that the Court consider directing Google and Twitter to provide email notice (in fact, amici are aware that both companies routinely provide notice of subpoenas to their customers). However, but Paul Committee has done what **it** can do.

However, the remaining parts of the *Dendrite* test have not been met, as explained in detail in amici's initial memorandum. Paul Committee argues that it has adequately pleaded claims for trademark infringement, false advertising and defamation, but it makes that argument only by listing the elements of claims and then identifying paragraphs in its complaint that contain conclusory allegations of those elements. Paul Committee never shows that it has plausibly alleged those

1 elements, and it never responds to amici's showing that, under Ninth Circuit law, the Court can consider the video itself in deciding whether, for example, it constitutes commercial speech. Nor does Paul Committee respond to the argument in amici's initial memorandum that it must plead a defamatory communication that is "of and concerning" Paul Committee, and that because Paul and Paul Committee are public figures, plaintiff must plead actual malice, yet it has done neither.

Nor has Paul Committee shown a prima facie case of trademark infringement—the only claim discussed separately in the part of plaintiff's memorandum that purports to show that it has presented evidence in support of its claims. Paul Committee argues at length (8-9, 15) that it has a common law trademark in the name of its candidate, but the existence of the mark does not show either that Doe's use was commercial or that there is a **likelihood** of confusion. Plaintiff points to selected tweets by various third parties blaming the video on Ron Paul. Grow Affidavit, DN 13 at 27-34. Although courts in commercial trademark cases take proven instances of actual confusion from even a few customers as serious evidence of likely confusion, great harm would be caused to free speech in America if hurried mistakes by voters about the sponsorship of political speech were a sufficient basis to obtain injunctive relief or damages against individuals who make public statements about their reasons for advocating or opposing the election of candidates for office. The Court can examine the video itself and judge whether it says anything implying sponsorship by Paul. The video says no more than "Vote Ron Paul." Because any member of the public is free to express that point of view, with or without Paul's permission, the use of those words does not imply Paul's involvement.

Finally, although amici do not endorse the pre-*Dendrite* articulation in *Seescandy* of a four-part test that includes separate consideration of the plaintiff's good faith or bad faith, the fifth stage of the *Dendrite* test requires a balancing of the equities, and the lack of candor on the part of plaintiff's counsel when they were seeking an ex parte order is properly weighed in that balance. Indeed, Paul Committee does not explain its failure to cite this controlling law in its original motion papers, thus effectively conceding the lack of equity in its initial application for early discovery. *See Career Agents Network v. Careeragentsnetwork.biz*, 722 F. Supp.2d 814, 822-823 (E.D. Mich. 2010) (failure

-6-

to cite controlling authority in ex parte proceeding at outset of litigation relevant to equitable determination whether to award attorney fees at end of trademark litigation).

## CONCLUSION

The Court should reaffirm that the *Dendrite* / *Highfields Capital* standard is the applicable rule in this district for deciding whether to grant early discovery to identify anonymous non-commercial speakers. Applying that standard, the Court should deny the motion for leave to take early discovery. In addition, the Court should remind future ex parte applicants for early discovery to identify anonymous Internet speakers that they are ethically required to call the *Highfields Capital* standard to the Court's attention, even if they contend either that the case is inapplicable on the facts, or that the test has been met.

Respectfully submitted,

/s/ Scott Michelman
Paul Alan Levy (DC Bar No. 946400)
Scott Michelman (Bar No. 236574)

Public Citizen Litigation Group
Email: smichelman@citizen.org
1600 20th Street N.W.
Washington, D.C. 20009
Telephone: (202) 588-1000
Facsimile: (202) 588-7795

/s/ Matthew Zimmerman
Matthew Zimmerman (Bar No. 212423)

mattz@eff.org
Electronic Frontier Foundation
454 Shotwell Street
San Francisco, California 94110
Telephone: (415) 436-9333 x127
Facsimile: (415) 436-9993
www.eff.org

/s/ Aden J. Fine
Aden J. Fine (Bar No. 186728)

afine@aclu.org
American Civil Liberties Union Foundation
125 Broad St., 18th Floor
New York, New York 10004
Telephone: (212) 549-2693
Facsimile: (212) 549-2654

February 23, 2012                    Attorneys for Amici Curiae

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 22nd day of February, 2012, I filed this Memorandum through the Court's ECF system, which will cause copies to be served electronically on counsel for all parties.

Respectfully submitted,

/s/ Scott Michelman
Scott Michelman

Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C. 20009
(202) 588-1000
smichelman@citizen.org

Attorney for Amici Curiae

-9-