UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| RON PAUL 2012 PRESIDENTIAL CAMPAIGN COMMITTEE, INC., <br><br>    Plaintiff, <br> v. <br> JOHN DOES, 1-10, <br><br>    Defendants. | No. C 12-0240 MEJ <br><br> **ORDER DENYING PLAINTIFF'S AMENDED EX PARTE APPLICATION FOR EXPEDITED DISCOVERY** <br><br> **Docket No. 12** |

In this lawsuit, the Doe Defendants are alleged to be the owners of a YouTube and Twitter account named "NHLiberty4Paul." Compl., Dkt. No. 1, ¶ 13. Under this pseudonym, Defendants uploaded a video on YouTube entitled "Jon Huntsman's Values" that attacks the former Republican primary nominee and concludes with the following text: "American Values and Liberty – Vote Ron Paul." Compl. ¶¶ 10, 12. Nine days after the video's release, Plaintiff filed a complaint in this Court asserting claims for: (1) false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a); (2) false description and representation in violation of the Lanham Act, 15 U.S.C. § 1125(a); and (3) common law libel and defamation. Compl. ¶¶ 17-41.

Plaintiff then filed an ex parte application seeking to take expedited discovery from YouTube and Twitter so that it could learn the Defendants' identities. Dkt. No. 5. The Court denied this application without prejudice because Plaintiff failed to address the proper legal standard for expedited discovery. Dkt. No. 8. Plaintiff has now amended its ex parte application and refiled it with the Court. Dkt. No. 12. The Public Citizen Litigation Group, American Civil Liberties Union Foundation, Electronic Frontier Foundation, and Digital Media Law Project — which the Court has permitted to act as Amici in this matter — oppose Plaintiff's ex parte application. *See* Dkt. Nos. 9,

11, and 15. The Court has considered the papers submitted by counsel and reviewed the relevant legal authorities. For the reasons explained below, Plaintiff's amended ex parte application for expedited discovery is DENIED WITHOUT PREJUDICE.

One of the principal issues raised by Amici concerns the legal standard that the Court should employ when deciding whether to grant expedited discovery to parties attempting to identify anonymous online speakers. When the Court denied Plaintiff's first ex parte application for expedited discovery, it ordered that any subsequent request must meet the four requirements outlined in *Columbia Insurance Company v. seescandy.com*: (1) Plaintiff must identify the missing parties with sufficient specificity so that the Court can determine that Defendants are real people who could be sued in federal court; (2) Plaintiff must identify all previous steps taken to locate Defendants; (3) Plaintiff's complaint must be able to withstand a motion to dismiss; and (4) Plaintiff must demonstrate that there is a reasonable likelihood of being able to identify Defendants through the requested discovery such that service of process would be possible. 185 F.R.D. 573, 578-80 (N.D. Cal. 1999).

Rather than using the above standard from *Columbia Insurance*, Amici urge the Court to adopt the tests employed by *Dendrite International, Inc. v. Doe*, 775 A.2d 756 (N.J. App. 2001), and *Highfields Capital Management, L.P., v. Doe*, 385 F.Supp.2d 969 (N.D. Cal. 2005). Dkt. No. 15 at 7 ("The Court should reaffirm the *Dendrite/Highfields Capital* standard is the applicable rule in this [D]istrict for deciding whether to grant early discovery to identify anonymous non-commercial speakers"). *Dendrite* explained the standard as follows: (1) Plaintiff must undertake efforts to notify the anonymous posters about the request for expedited discovery; (2) Plaintiff must specifically identify the statements at issue; (3) the Court must carefully review Plaintiff's complaint to ensure that it could withstand a motion to dismiss; (4) Plaintiff must present sufficient evidence to support each element of its claims on a prima facie basis; (5) lastly, the Court must balance Defendants' "First Amendment right of anonymous free speech against the strength of the prima facie case presented and the necessity for the disclosure." 775 A.2d at 760. *Highfields Capital*, relying in part on *Dendrite*, set forth the following standard: (1) Plaintiff must first produce competent evidence

2

1 addressing all of the inferences of fact essential to support a prima facie case on all elements of its
2 claims; and (2) if the Plaintiff is able to do this, then the Court must weigh the competing interests
3 between protecting Defendants' First Amendment and privacy rights against Plaintiff's interest to
4 advance the litigation. 385 F.Supp.2d at 975-76.

5 The Court declines to accept Amici's invitation to determine which of the above legal
6 standards should be employed for the evaluation of Plaintiff's ex parte application. Such a
7 determination is not necessary for the purposes of this decision. *Columbia Insurance*, *Dendrite*, and
8 *Highfields Capital* all require Plaintiff to establish that it has filed a valid complaint so the Court can
9 be assured that the alleged claims will withstand a motion to dismiss. The Court agrees that this
10 determination is mandatory because it is the only way to prevent the unnecessary disclosure of
11 anonymous individuals who may have not committed any misconduct. Because the Court finds, as
12 explained in detail below, that Plaintiff has failed to satisfy this common requirement from
13 *Columbia Insurance*, *Dendrite*, and *Highfields Capital*, the Court denies Plaintiff's amended ex
14 parte application without addressing any other prongs from the three legal standards or which
15 standard should be used in future cases.[1]

16 The Court therefore begins its analysis by examining Plaintiff's first two claims under the
17 Lanham Act. Both Plaintiff and Amici agree that these claims are only actionable if Defendants' use
18 of Plaintiff's trademark was commercial in nature. *See* 15 U.S.C. § 1125(a); *Hancock Park*
19 *Homeowners Ass'n Est. 1948 v. Hancock Park Homeowners Ass'n*, 2006 WL 4532986, at *4 (C.D.
20 Cal. Sept. 20, 2006) (citing *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005)
21 (applying *Bosley* to a claim under 15 U.S.C. § 1125(a) and reaffirming that "the Lanham Act,

---

[1] The Court notes that at this stage of the proceedings it is only concerned about the viability of Plaintiff's federal claims under the Lanham Act. Plaintiff's jurisdictional statement provides that this Court has subject matter jurisdiction based on these first two trademark claims. Compl. ¶ 6. Plaintiff's third claim for libel and defamation only relies on the Court's ability to exercise supplemental jurisdiction over this state law claim. *Id.* Thus, if Plaintiff cannot establish that it can withstand a motion to dismiss on its trademark claims, issues develop regarding this Court's subject matter jurisdiction over Plaintiff's remaining claim for libel and defamation. *See* 28 U.S.C. § 1367(c)(3) (a court may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction").

1 expressly enacted to be applied in commercial contexts, does not prohibit all unauthorized uses of a
2 trademark") (internal quotations omitted)). Accordingly, Plaintiff must establish that its trademark
3 claims are connected with the sale of goods and services. *Bosley*, 403 F.3d at 676 (explaining that
4 the Lanham Act was only "designed to protect consumers who have formed particular associations
5 with a mark from buying a competing product using the same or substantially similar mark and to
6 allow the mark holder to distinguish his product from that of his rivals").

7 Plaintiff argues that it has met the Lanham Act's commercial use requirement for two
8 reasons: (1) Defendants used a Twitter account to post the video on YouTube and both of these
9 websites are commercial in nature; and (2) the video was intended to frustrate Plaintiff's fundraising
10 efforts and increase the amount of money contributed to Presidential nominees other than Ron Paul.
11 Dkt. No. 12 at 17-18. The first reason is meritless. Plaintiff essentially argues that any individual
12 who uses a commercial website — whether it is to post a video on YouTube or send an e-mail
13 through Gmail — has automatically satisfied the commercial use requirement under the Lanham
14 Act. While it is true that the websites for both Twitter and YouTube may have commercial
15 purposes, it is Defendants' conduct that is at issue here. And it is this conduct that in some way
16 must be connected to the sale of goods and services for the Lanham Act to apply. Accordingly,
17 Plaintiff's first reason does not persuade the Court that Defendants' *own* use of Plaintiff's trademark
18 was in a "commercial or competitive context." *See Stanislaus Custodial Deputy Sheriffs' Ass'n v.*
19 *Deputy Sheriff's Ass'n of Stanislaus Cnty.*, 2010 WL 843131, at *7 (N.D. Cal. Mar. 10, 2010).[2]

20 Plaintiff's second reason requires a closer analysis. The Court agrees with Plaintiff that
21 *Bosley* does not directly address the question of whether an individual who improperly uses the
22 trademarked name of another politician to express an opinion has done so in a commercial context

---

24 [2] In *Bosley*, the Ninth Circuit evaluated a defendant's website that did not have any
25 commercial links but did provide links to a discussion group that in turn contained others' advertisements. 403 F.3d at 678. *Bosley* held that this "roundabout path to the advertising of others
26 is too attenuated to render [the defendant's] site commercial." *Id.* In a similar manner, using another company's commercial website to post a comment or video is just far "too attenuated" to
27 result in an individual's own conduct automatically meeting the Lanham Act's commercial use requirement.
28

that satisfies the requirements of the Lanham Act. But *Bosley* does explain that "[T]rademark infringement protects only against mistaken *purchasing decisions* and not against confusion generally." 403 F.3d at 677 (quoting *Lang v. Ret. Living Publ'g Co., Inc.*, 949 F.2d 576, 582-83 (2d. Cir. 1991). *Bosley* goes on to stress that the "appropriate inquiry is whether [the defendant] offers competing services to the public." *Id.* at 679; *see also Stanislaus*, 2010 WL 843131, at *6 (analyzing *Bosley* and other cases to find that "if an actual sale of goods is not involved, the infringer must be engaged in some form of commercial *competition*"). The District Court in Utah summarized the Tenth Circuit's view on this issue as follows:

> In our view, the defendant in a trademark infringement and unfair competition case must use the mark in connection with the goods and services of a competing producer, not merely to make a comment on the trademark owner's goods and services . . . . Unless there is a competing good or service labeled or associated with the plaintiff's trademark, the concerns of the Lanham Act are not invoked.

*Koch Indus., Inc. v. Does*, 2011 WL 1775765, at *3 (D.Utah May 9, 2011) (citing *Utah Lighthouse Ministry v. F.A.I.R.*, 527 F.3d 1045, 1054 (10th Cir. 2008). In *Koch*, the defendants created a website that impersonated the plaintiff's company website, and then issued a press release that contained a political message and was designed to appear as coming from the plaintiff. *Id.* at 1. The *Koch* Court dismissed the plaintiff's Lanham Act claims for failing to meet the commercial use requirement, explaining that the defendants' "press release and fake website did not relate to any goods or services and were only political in nature." *Id.* at 3. *Koch* specifically rejected the plaintiff's theory that the defendants issued the press release to attract more contributions to their activities since the defendants never even identified themselves in their press release or fake website.[3] *Id.* at 4.

While *Koch* is not exactly analogous to this matter, it — as well as other decisions in the

---

[3] *Hancock Park* found that the commercial use requirement is not satisfied unless there is a profit motive involved. *See* 2006 WL 4532986, at *5 ("Neither Plaintiff's nor Defendant's actions involve commercial transactions in any sense, nor are they acting with a motive for profit. Plaintiff's services cannot be considered 'commercial' merely because they are funded by freely given donations"). The Court does not address this issue, but only notes that it raises additional questions that were not discussed in Plaintiff's amended ex parte application, leading the Court to have concerns regarding Plaintiff's complaint being able to withstand a motion to dismiss.

Ninth Circuit — establish that a critical issue in this analysis is whether the trademark infringer is alleged to have offered any competing services. Plaintiff does not address this issue in its amended ex parte application. And the Court's review of the video shows that Defendants did not identify themselves as a competing organization and did not solicit any contributions. More importantly, and why Plaintiff's request for expedited discovery is denied, the complaint does not contain any allegations that Defendants released the video to compete with Plaintiff.[4] In *Stanislaus*, the Court dismissed the plaintiff's trademark claims for the same lack of factual allegations:

> Pursuant to *Thompson* and *Bosley*, defendant's use of plaintiff's name must both "affect" interstate commerce and also be used in a commercial or competitive context. Here, the First Amended Complaint does not set forth allegations of the commercial use of the trade name. Nor does the FAC allege that defendant used the name to try to secure any kind of commercial benefit or competitive advantage. Plaintiff fails to allege that Defendants [sic] are operating any type of businesses or conducting or offering any services or otherwise using Plaintiff's trade name in connection with any goods or services. Plaintiff must allege that some goods, services or other form of competition [sic] with the infringing organization. The FAC must allege that [sic] use of plaintiff's trademark in a commercial or competitive context.

2010 WL 843131, at *7. For these similar reasons, Plaintiff fails to satisfy the Court in its amended ex parte application that its trademark claims are viable, particularly based on the current allegations in Plaintiff's complaint. Before allowing Plaintiff to conduct discovery to identify the anonymous Defendants, the Court is mindful of the common requirement outlined in *Columbia Insurance, Dendrite,* and *Highfields Capital* and wants to be assured that Plaintiff's federal claims will withstand a motion to dismiss. At this point, Plaintiff has failed to assure the Court of this and

///

---

[4] Rather, Plaintiff's complaint makes only a few passing references that the video was intended to frustrate Plaintiff's fundraising efforts with prospective donors. The plaintiff in *Bosley* made a similar allegation, claiming that the defendant "used the mark 'in connection with goods and services' because he prevented users from obtaining the plaintiff's goods and services." 403 F.3d at 678. *Bosley* dismissed this theory since it had nothing to do with whether the defendant offered competing services to the public. *Id.* at 679.

consequently its ex parte application is DENIED WITHOUT PREJUDICE.[5]

**IT IS SO ORDERED.**

Dated: March 8, 2012

_____
Maria-Elena James
Chief United States Magistrate Judge

UNITED STATES DISTRICT COURT
For the Northern District of California

---

[5] Although the Court does not analyze Plaintiff's claim for libel and defamation, the claim appears on its face to be plausible and well pled. Plaintiff's decision to not pursue this claim in state court and instead assert novel trademark claims that appear to have never previously been addressed by the federal courts requires this Court to first be satisfied that they are viable claims before permitting expedited discovery.